IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RITA SHULTZ,                                      )
                                                  )
          Plaintiff,                            )
                                                  )
v.                                                )   No. 09-1220-WEB
                                                  )
BLUE CROSS AND BLUE SHIELD OF                     )
KANSAS, INC.,                                     )
                                                  )
          Defendant.                           )
                                                  )

## Memorandum and Order

On June 23, 2009, plaintiff Rita Shultz filed a Petition against defendant Blue Cross in the District Court of Sedgwick County, Kansas. The Petition alleged that plaintiff was injured in a horse-riding accident and was transported by helicopter to a hospital. It alleged that Blue Cross "provides non-ERISA insurance coverage" to plaintiff but Blue Cross has taken the position that most of the charges incurred by plaintiff are unreasonable and will be disallowed. The petition seeks judgment of $12,303.68 and penalties, costs and fees against the defendant. Blue Cross removed the action on July 14, 2009, claiming federal jurisdiction under 28 U.S.C. § 1331 because plaintiff's claim is one for benefits under an employee welfare benefit plan governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001. Doc. 1. The matter is now before the court on plaintiff's motion to remand the action to state court. Doc. 10.

    I. *Motion to Remand*.

The Notice of Removal alleges that the health insurance plan in question is part of an ERISA plan. The policy was issued to the Shultz Law Office, P.A. Doc. 1 at 2. According to

Blue Cross, the firm's working owner Craig Shultz was a participant in the plan and his spouse, plaintiff Rita Shultz, was an eligible beneficiary under the plan. *Id*. Defendant contends that since the policy was first issued, at least one non-owner employee of the firm has participated in the plan. Defendant contends the policy is thus part of a plan governed by ERISA and that plaintiff's claim is one for benefits under an ERISA plan, making it removable under 28 U.S.C. § 1441.

Plaintiff contends her insurance coverage is not part of an ERISA plan and that no federal jurisdiction exists over the claim. Plaintiff contends the policy does not fall under ERISA because of 29 C.F.R. §2510.3-3, which excludes from ERISA coverage plans that do not cover any employees, and which provides in part :

> "An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse.

Even if this rule did not control, plaintiff contends the policy was specifically designated as a "non group" plan and was not dependent upon employment. Moreover, she contends the "safe harbor" rule of 29 C.F.R. §2510.3-1(j) applies and excludes ERISA coverage. Lastly, although she concedes that the firm pays health insurance premiums for its employees, she argues there is no showing of employer involvement or implementation of a plan to provide health care benefits under the factors in *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460 (10th Cir. 1997). Plaintiff thus moves to remand the action to state court.

In response, Blue Cross first submits that the "safe harbor" rule does not apply because the law firm pays its employees' premiums. Doc. 20 at 1. Further, it contends the law firm's interaction with Blue Cross shows that the firm established and maintains a plan to provide

health insurance benefits to employees, including by paying their health insurance premiums, and that the policy at issue was part of an overall ERISA plan. Blue Cross has provided affidavits showing what it contends is the firm's establishment and maintenance of a plan meeting the criteria of *Gaylor*.

II. *Facts*.

A. The Claim.

1. On June 23, 2009, plaintiff Rita Shultz filed a Petition against BCBS in the District Court of Sedgwick County, Kansas, captioned Rita Shultz v. Blue Cross and Blue Shield of Kansas, Inc., Case No. 09 LM 11530, alleging BCBS failed to pay medical insurance benefits. (Doc. 1, Exhibit A, Petition at ¶ 5).

2. Shultz alleges she was injured on July 16, 2008 in a horse-riding accident in Colorado and transported by a Med-Trans Corporation ("Med-Trans") helicopter to a hospital in Denver, Colorado. (Id. at ¶ 3).

3. For the helicopter services, Med-Trans billed Shultz a total of $16,589.62 (the "Claim"). (Id. at ¶ 4).

4. BCBS paid $4,285.94 of the Claim. (Id. at ¶ 5).

5. Shultz alleges "BCBS provides non-ERISA insurance coverage to [Shultz] and has taken the position and advised [Shultz] that most of the charges referred to above should and would be disallowed for payment as unreasonable charges for the services provided." (Id.).

6. Shultz further alleges that "except for the amount of $4,285.94, defendant BCBS has failed and refused to reimburse [Shultz] for the cost of such services and for such medical expenses and has refused to provide adequate basis for that refusal." (Id.).

B.  The Policy.

7.  Shultz's Petition is based on a medical insurance policy (the "Shultz Policy") issued by BCBS to Shultz's husband, Craig Shultz, who is the working owner of the Shultz Law Office, P.A.  (Doc. 11, Craig Shultz Affidavit, hereinafter "Shultz Aff.,"at ¶ 1).

8.  In September 1996, Craig Shultz applied to BCBS for health insurance coverage for his family.  The "First Choice" BCBS enrollment form signed by Shultz stated that he was applying through his (then) employer, "Shultz & Lonker, Chartered."  Jump Dec., Exh. A.

9.  Blue Cross issued a policy effective 10/01/96, for the insured Craig Shultz.  The policy was identified under the "Group Name" of "Shultz and Lonker Law Office," with a "Group Number" of "M005566."  Another page identified the contract issued to Shultz as a "Comprehensive Major Medical Non-Group Direct Enrolled Contract," and listed a "Non-Group Category" of "AW," with an "Identification Number" of "870781376."  Jump Dec., Exh. B. Shultz and his dependents were the only persons insured by the policy.

10.  On September 29, 1997, Craig Shultz wrote to BCBS stating that "we would like to enroll our new employee, Monica F. Adolfson, in the First Choice Plan under our firm's policy as referenced above."  The letter sought information concerning quotes and available coverage. The letter references "Shultz and Lonker Law Office" with a "Business ID: M005566."  Jump Dec., Exh. C.  BCBS sent the Shultz and Lonker Law Office a response on October 17, 1997, containing enrollment information and employee enrollment forms.  Jump Dec., Exh. D.  On October 24, 1997, Craig Shultz sent back to BCBS the enrollment forms for Adolfson "under our firm's First Choice Plan policy," referring to M005566.  Jump Dec., Exh. E.  According to BCBS, Adolfson's benefit package was the same as that selected by Craig Shultz for the Shultz

policy because only the firm could change the benefits package. Adolfson was enrolled in the same BCBS plan as the Shultz policy from November 1, 1997, to August 1, 1998. Jump Dec. ¶10.

11. According to the affidavit of Craig Shultz, he was previously in the law firm of Shultz, Lonker & Raymond, Chartered, but that firm ceased to exist on December 31, 1999. The Shultz Law Office, P.A. was formed and incorporated on or about January 31, 2000. Craig Shultz is the sole shareholder, director, and officer in the firm, and has been since its inception. Shultz Aff., ¶¶ 1-4, 10. Shultz states that to his knowledge, Shultz Law Office, P.A. has never established an employee welfare benefit plan.

12. The employees of Shultz Law Office, P.A. maintain individual health insurance policies. Although most are covered by BCBS, one has coverage with a different company. No employee is required to purchase health insurance. Shultz Law Office, P.A. will pay the premium for such insurance or pay the same amount of the cost directly to the employee. Shultz Aff., ¶ 7.

13. In March of 2003, Craig Shultz signed a BCBS change form to increase the deductible to $1,000 and to maintain the health plan without dental coverage. Jump Dec., Exh. F. This change apparently only affected the policy issued to Craig Shultz.

14. On March 21, 2006, Craig Shultz requested that BCBS add his secretary Lura Unger as an authorized person to communicate with BCBS regarding the plan referenced as M005566. Jump Dec., Exh. G.

15. On April 8, 2009, in response to a BCBS request that Craig Shultz sign a HIPAA Designation Form, Unger sent back the form executed by Shultz. The form identifies Craig

Shultz as the "Plan Sponsor," which was defined as "A legal entity that offers the Group Health Plan (GHP) to its employees or members." Unger was designated as the "Plan Administrator," which was defined as "The employee of the Plan Sponsor who is in charge of administering the GHP...." Unger was also designated as "Group Leader," the person designated by the Plan Sponsor to handle enrollment and disenrollment of GHP members. The form referred to Group Number M005566. The Group Name was listed as Shultz and Lonker Law Office. The form was signed by Craig Shultz on April 6, 2009. Jump Dec., Exh. H.

16. On April 22, 2009, Unger faxed BCBS to a health profile for employee Patrice C. Coke and requested "a quote for the coverage under the above group policy," referring to M005566. Jump Dec., Exh. J.

17. In response, BCBS sent an enrollment packet to the firm to provide to Ms. Coke. Jump Dec., Exh. K.

18. BCBS currently provides, and provided at the time of the claim at issue, individual medical insurance policies to Shultz Law Office, P.A. employees Michael Shultz, Patrice Coke, David Shultz, and Lura Unger. Jump Dec. ¶ 17.

   III. *Discussion*.

The propriety of removal turns on whether the insurance policy on which plaintiff's claim is based is part of an ERISA plan. If it is, federal question jurisdiction exists and removal was proper. If it is not part of an ERISA plan, there is no federal jurisdiction and remand of the action to state court is required.

ERISA defines an "employee welfare benefit plan" as:

> any plan, fund, or program ... established or maintained by an employer ... for the purpose of providing for its participants or

6

> their beneficiaries, through the purchase of insurance or otherwise
> ... medical, surgical, or hospital care or benefits, or benefits in the
> event of sickness, accident, disability, death or unemployment ...

29 U.S.C. § 1002(1).[1]  A "participant" means any employee or former employee of an employer who may become eligible to receive a benefit of any type from an employee benefit plan.  29 U.S.C. § 1002(7).

The definition of an ERISA welfare benefit plan thus contains five elements:  (1) a plan, fund, or program (2) established or maintained (3) by an employer (4) for the purpose of providing health care or disability benefits (5) to participants or their beneficiaries.  *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 464 (10th Cir. 1997).

In determining whether ERISA applies, courts turn first to the safe harbor provision of 29 C.F.R. §2510.3-1(j), which declares certain plans to be outside of ERISA coverage.  Although plaintiff argues that the safe harbor applies, one of its requirements is a showing that "no contribution is made by the employer."  Plaintiff concedes that the premiums for both Craig Shultz's policy and for the individual employees' policies are paid by Shultz Law Office, P.A.  Accordingly, the safe harbor cannot apply.  This does not mean, however, that the policy is automatically deemed an ERISA plan.  *Gaylor*, 112 F.3d at 463.  Rather, it "is subject to further evaluation under the conventional tests."  *Id*. (*quoting Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1133 (1st Cir. 1995)).

Plaintiff next points to 29 C.F.R. §2510.3-3, which provides in part that an employee

---

[1] ERISA is generally limited to employers engaged in "commerce," meaning interstate commerce.  Plaintiff does not assert that this requirement is lacking in this case.  *Cf. Reber v. Provident Life & Acc. Ins. Co.*, 93 F.Supp.2d 995, 1008 (S.D. Ind. 2000) (law firm's business affected commerce).

benefit plan generally does not include any plan, fund or program under which no employees are participants covered under the plan, and that "an individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual...." She argues that no employees are covered under the policy under which she is covered, and that the law firm is wholly owned by Craig Shultz, such that the policy cannot be part of an ERISA plan. The court agrees with plaintiff that the record shows she and Craig Shultz would not be considered "employees" for these purposes, and that no other persons are currently enrolled or entitled to benefits under that policy. The question here is whether the policy issued to Craig Shultz is properly considered related to, and part of, a plan that also includes the individual policies issued to the employees of the firm.

In *Slamen v Paul Revere Life Ins. Co.*, 166 F.3d 1102 (11th Cir. 1999), the plaintiff was the owner of a dental practice, doing business as a professional corporation, who in 1981 established a plan to provide health and life insurance for himself and his employees. Several years later, he purchased a disability policy from another company that covered only himself. The premiums were all paid by the corporation. Relying on §2510.3-3, the court found that the disability policy was not part of an ERISA plan. It noted that the owner was not considered an employee and that no other employees were covered by the disability policy. The two policies "were purchased at different times, from different insurers and for different purposes." *Id*. at 1105. "In light of the clear exclusion of benefit plans covering only owners from ERISA's scope, we think that it makes little sense to treat a benefit plan, which covers only a business owner such as [plaintiff] as a component of the employer's employee benefit program." *Id*. at

8

106. The court said that "an *employer* benefit program must be analyzed separately from an *employee* benefit program absent evidence – not present here – showing that the two programs are related."

In *Sipma v. Massachusetts Cas. Ins. Co.*, 256 F.3d 1006 (10th Cir. 2001), the corporate employer was owned by two individuals, including the plaintiff, who owned a 49% share of the company. The corporation paid the premiums for two disability policies and two life insurance policies for the two owners. Additionally, the corporation paid the premiums for a separate health insurance policy that covered the two owners and any employees who had worked for six months. On appeal, the court found that the plaintiff, as a minority owner of the company, was an "employee" under ERISA, and that the disability policy was issued to plaintiff under circumstances that met the *Gaylor* requirements for an ERISA plan.

In *Watson v. Proctor (In Re Watson)*, 161 F.3d 593 (9th Cir. 1998), in the context of a bankruptcy appeal, the court reviewed a plan established by a doctor who was the sole owner of a medical corporation. The doctor was the sole participant in the plan, which provided him with pension benefits, and in fact he had no employees. Later, he formed a partnership with another doctor, and the partnership established a pension benefit plan for several nurse employees. After the partnership was dissolved, an issue arose as to whether the doctor's pension fund was covered by ERISA. Although the doctor argued that his plan was sufficiently related to the plan covering the nurses, the court found that "even if the plans were created simultaneously or shared other common characteristics, they are independent plans under ERISA." *Id*. at 596, n.4.

In *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404 (9th Cir. 1995), a business applied for a short-term group policy to cover two partners in the business (including the

9

plaintiff) and their employee.  The business subsequently secured long-term coverage with another insurer for the other two individuals, while the plaintiff remained on the first policy.  A dispute subsequently arose as to whether the plaintiff's policy was part of an ERISA plan.  The court rejected plaintiff's argument that because his policy covered him alone it was not part of an ERISA plan.  The court concluded that plaintiff's policy "was just one component of [the employer's] employee benefit program and that the program, taken as a whole, constitutes an ERISA plan." *Id*. at 407.   "Because the [plaintiff's] policy was purchased by [the employer] for the purpose of fulfilling its plan to provide benefits to its employees as well as its partners, the policy is part of an ERISA plan and is governed by ERISA."  *Id*. at 408.

The upshot of these cases seems to be that if a plan applies only to the sole owner of an employer, it will not be covered by ERISA.  On the other hand, if a plan covers employees of the business or the employees and the owner alike, the plan may qualify for ERISA coverage.

Unlike the *Slaman* case, supra, the defendant in this case has provided some evidence of a relationship between the policy issued to the sole owner of the corporation and the policies issued to individual employees of the corporation.  The facts show that Mr. Shultz previously enrolled an employee under that same policy at his predecessor law firm.  That policy was subsequently treated by both Shultz Law Office, P.A. and BCBS as part of the BCBS Group Number M005566, which included several employee policies.  Although all of the policies are individual, they are all apparently funded under the firm's policy of providing health care benefits to all individuals working in the firm, including the working owner.  The firm designated Ms. Unger to act as "Plan Administrator" and "Group Leader" under HIPAA to handle enrollment and disenrollment of employees.  That designation authorized her to discuss

10

"the insurance plan" with BCBS, including Mr. Shultz's policy as well as the employees' policies. *See* Doc. 20, Exh. A at 2. Unlike *Watson*, nothing in the record here suggests that plaintiff's insurance policy was maintained pursuant to a distinct policy or by-law of the corporation applicable only to the owner. The most reasonable inference from the present record is that the Shultz policy was obtained and maintained as part of the law firm's common plan of providing health insurance benefits to all workers in the firm, including the owner. Under the circumstances, the court concludes that Mr. Shultz was a participant in the same plan that covered the employees in his firm. *Cf. Yates v. Hendon*, 541 U.S. 1 (2004) (sole owner of business may qualify as "participant" in ERISA pension plan as long as it covers one or more employees other than himself). The court thus finds that 29 C.F.R. §2510-3.3 does not preclude the Shultz policy from being part of an ERISA plan.

A "plan, fund, or program" exists if "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits." *Gaylor*, 112 F.3d at 464 (cite omitted). The court concludes that a plan or program exists. The health insurance policy issued to Craig Shultz and the health insurance policies issued to the firm's employees allow a reasonable person to ascertain that the intended benefits are health insurance, the class of beneficiaries include the working owner and employees of the law firm (and their beneficiaries), the financing is provided by Shultz Law Office, P.A., and the procedures for receiving benefits are established primarily by the particular policies providing health benefits.

The "established or maintained" requirement is designed to ensure that the plan is part of an employment relationship. *Gaylor*, 112 F.3d at 464 [citation omitted]. According to *Gaylor*,

11

the court determines whether the plan is part of an employment relationship by looking at the degree of participation by the employer in the establishment or maintenance of the plan. An employer's mere purchase of insurance for its employees does not, without more, constitute an ERISA plan. An important factor is whether the employer's purchase of the policy is an expressed intention by the employer to provide benefits on a regular and long-term basis. Although the purchase of insurance does not conclusively establish a plan, it is evidence of the employer's intention to establish a plan. "The purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan ... has been established." See *Gaylor*, 112 F.3d at 464 [citations omitted]. The undisputed facts before the court show that the Shultz Law Office, P.A. has purchased insurance for its owner and its employees on a regular and long-term basis in connection with their employment. The court notes that although plaintiff argues BCBS has improperly referred to conduct of the Shultz and Lonker firm to support its arguments, the record shows that both BCBS and the Shultz Law Office, P.A. treated the latter firm as a successor in interest to the Shultz and Lonker firm insofar as health insurance coverage is concerned. Moreover, the individual policy covering Craig Shultz and the plaintiff was first purchased and maintained by Shultz and Lonker and then by Shultz Law Office, P.A. over a period of time. The Shultz Law Office, P.A. has also acted as an administrator with respect to all of the policies on an ongoing basis, paying premiums, keeping records of payment, obtaining information about insurance and relaying it to participants, and assisting employees in selecting and obtaining insurance. The plan exists for the purpose of providing health care benefits to individuals working at the firm. Even though the owner may not have specifically contemplated that an ERISA plan was being created, the firm has in fact created a plan of providing health care

benefits to employees, and that plan falls within the definition of an ERISA plan under federal law. *See Reber v. Provident Life & Acc. Ins. Co.*, 93 F.Supp.2d 995, 1005 (S.D. Ind. 2000) (the necessary "intent" under ERISA is the intent to provide benefits for employees); *Peckham v. Gem State Mut. of Utah*, 964 F.2d 1043, 1049, n.11 (10th Cir. 1992) (if a plan meets the five criterion, it is governed by ERISA whether or not the parties wish to be subject to ERISA).

Under the record presented, the court concludes that defendant has satisfied its burden of establishing federal jurisdiction by showing that the policy in question is likely part of an employee welfare benefit plan within the meaning of ERISA.

IV. *Conclusion*

Plaintiff's Motion to Remand (Doc. 10) is DENIED. IT IS SO ORDERED this 24th Day of September, 2009, at Wichita, Ks.

>s/ Wesley E. Brown
>Wesley E. Brown
>U.S. Senior District Judge