IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| RITA SHULTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-1220-WEB |
| | ) | |
| BLUE CROSS AND BLUE SHIELD | ) | |
| OF KANSAS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER

Plaintiff Rita Schultz filed a petition against defendant Blue Cross and Blue Shield of Kansas (BCBS) in the District Court of Sedgwick County, Kansas. Defendant removed the action to federal court, claiming federal jurisdiction under 28 U.S.C. § 1331 because plaintiff's claim is one for benefits under an employee welfare benefit plan governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. Plaintiff filed a motion to remand, which was denied. The matter is now before the court on defendant's Motion for Summary Judgment (Doc. 32) and defendant's Motion to Strike Jury Demand (Doc. 39).

I. Facts

1. BCBS provides health insurance coverage to Craig Schultz and his wife, Rita Schultz, through an insurance plan paid through Craig Schultz's job.

2. BCBS administers the health insurance plan, and pays benefits pursuant to the contract between the parties.

3. On July 16, 2008, Rita Shultz was injured in a horse-riding accident in Colorado and transported by a Med-Trans Corporation helicopter to a hospital in Aurora, Colorado.

1

4. Med-Trans billed Shultz a total of $16,589.62 for the helicopter ambulance services.

5. BCBS paid $4,285.94 of the claims and denied the remainder as excess of BCBS's allowable charge.

6. The contract contains the following provision regarding the allowable charges for Ambulance Service provided by Non-Contracting Providers outside the Service Area:

> D.2. b. For arrangements other than those set forth in item D.1., in instances where the insured receives service from a provider which is not contracting with the Blue Cross and/or Blue Shield Company servicing the area in which the provider is located, the allowable charges (before application of any Deductible, Coinsurance, Copayment/Copay, shared payment or benefit limits) will be determined as follows and the Insured is responsible for any difference between the allowable charge and the provider's actual charge:
>
> > (4) Ambulance Service, Private Duty Nursing, Medical Supplies, Orthopaedic Appliance, Prostheses, and Other Services that may be covered by this contract - The allowable charge will be the provider's actual charge for the covered service up to 80% of the maximum amount allowable for the same service by providers that are Contracting Providers of the Company with the same licensure or certification. If no Contracting Providers provide the same service, the Company will determine an amount to be allowed for that procedure.
>
> When a covered service that is required for a Medical Emergency is provided by a Non-Contracting Provider, the allowable charge will be the provider's actual charge for the service up to the maximum amount allowable for the same service provided by providers that are Contracting Institutional Providers of the Company that are the same kinds of providers or Contracting Professional Providers of the Company with the same licensure or certification.

7. Med-Trans Corporation is a Non-Contracting Provider.

## II. Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Fed.R.Civ.P. 56(c)(2). A fact is "material" if under the substantive law it is essential to the proper disposition of the claim. Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc., 259 F.3d 1226, 1231-1232 (10th Cir. 2001) quoting Adler v. Wal-Mart Stores, 144 F.3d 664, 670 (10th Cir. 1998). "An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler, 144 F.3d at 670. The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgement. Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000). The burden of showing that no genuine issue of material fact exists is borne by the moving party. E.E.O.C. v. Horizon / MS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir. 2000). Once the moving party meets the burden, the nonmoving party must demonstrate a genuine issue for trial on a material matter. Concrete Works, Inc. v. City & County of Denver, 36 F.3d 1513, 1517 (10th Cir. 1994).

The denial of benefits in an ERISA plan is to be "reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948 (1989). The plan at issue grants discretionary authority to the insurer. When a plan grants discretion, "a court reviewing a challenge to a denial of employee benefits... applies an 'arbitrary and capricious' standard to a plan administrator's action." Charter Canyon Treatment Center v. Pool Co., 153 F.3d 1132, 1135 (10th Cir. 1998).

The Tenth Circuit applied the arbitrary and capricious standard as follows:

> Indicia of an arbitrary and capricious decision include, *inter alia*, lack of substantial evidence. Substantial evidence is such that a reasonable mind might

> accept to support the conclusion reached by the decision maker. It requires more than a scintilla but less than a preponderance. In determining whether the evidence in support of the administrator's decision is substantial, the reviewing court must take into account whatever the record fairly detracts from its weight. Moreover, substantiality of the evidence is based upon the record as a whole.

Rekstad v. U.S. Bancorp, 451 F.3d 1114, 1119-20 (10th Cir. 2006).

When an ERISA plan administrator is also the insurer of the plan, an inherent conflict of interest exists. DeGrado v. Jefferson Pilot Financial Ins. Co., 451 F.3d 1161, 1167-68 (10th Cir. 2006). The conflict "should 'be weighed as a factor in determining whether there is an abuse of discretion.'" Metropolitan Life Insurance Co. v. Glenn, 554 U.S. 105, 115, 128 S.Ct. 2343 (2008), citing Firestone, 489 U.S. at 115. The court should take into account several different case specific factors in its review, weighing them all together. Holcomb v. Unum Life Ins. Co. Of America, 578 F.3d 1187, 1192-93 (10th Cir. 2009).

III. Discussion

a. ERISA plan

Plaintiff argues the insurance coverage provided by BCBS is not provided pursuant to an ERISA plan. Plaintiff originally raised this issue in her motion to remand. The court found "the defendant has satisfied its burden of establishing federal jurisdiction by showing that the policy in question is likely part of an employee welfare benefit plan withing the meaning of ERISA." (Doc. 22, Memorandum and Order). The court has a responsibility to revisit this issue raised by the plaintiff, as federal jurisdiction is based on the court's finding that the policy is part of an ERISA plan. If at any time "a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." Cunningham v. BHP Petroleum Great Britian PLC, 427 F.3d 1238, 1245 (10th Cir. 2005).

4

Plaintiff provides one additional piece of evidence in support of her argument that the policy is not an ERISA policy. On February 10, 2010, BCBS sent the plaintiff a letter, which states:

> "We have recently been made aware that you currently contribute a portion of the premium for your employees' First Choice coverage underwritten by Blue Cross and Blue Shield of Kansas. Because First Choice is designated in our filing with the Kansas Insurance Department as individual non-group coverage, we are not permitted by law to administer this program as a group health plan in which you, the employer, contribute a part of the premium.
>
> Having learned of your practice of contributing toward the employees' First Choice premiums, we are required to assist you in changing this practice. You have two alternatives at this time. You can elect to establish a group policy to meet your employees' health care needs, or choose to have each employee billed individually at their home address for their current health insurance coverage."
> (Doc. 42-2).

Plaintiff argues that this letter shows that BCBS did not consider the plaintiff's policy to be an ERISA plan. Plaintiff fails to recognize that the court considered individual policies in its remand order. "Although all of the policies are individual, they are all apparently funded under the firm's policy of providing health care benefits to all individuals working in the firm, including the working owner." Furthermore, several courts have found that payment of premiums by an employer, along with other factors, establishes an ERISA policy. O'Leary v. Provident Life and Accident Ins. Co., 456 F.Supp.2d 285 (D.Mass. 2006); Burrill v. Leco Corp., 1998 WL 34078144. Court have also found that plans can be funded through the purchase of group or individual policies. Agrawal v. Paul Revere Life Ins. Co., 205 F.3d 297, 301 (6th Cir. 2000); Peterson v. American Life & Health Ins. Co., 48 F.3d 404, 407 (9th Cir. 1995); Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982).

Defendant's removal from state court was premised on the Court's federal question

5

jurisdiction. Removal was proper as the defendant provided sufficient evidence for the court to find that the insurance plan which provided benefits to the plaintiff was pursuant to ERISA, and therefore falling under Federal jurisdiction. There is nothing before the court for the court to find differently. The plaintiff has not submitted any additional evidence which would allow the court to find that this was not a plan administered under ERISA. The court's findings in the Memorandum and Order finding the policy was part of an ERISA plan was correct.

b. Appeal process

Plaintiff raises an argument regarding the appeal process as set out in the contract, and argues that the appeal process was not followed by BCBS. Plaintiff requests additional documentation from BCBS and requests that the court postpone ruling on the Motion for Summary Judgment.

Plaintiff requested the following documents from BCBS:

> A. Any documents, reports, memorandum or other writing of any kind including, but not limited to, records of the defendant that reflect the "maximum amount allowable for the same service" provided to plaintiff and/or refer to the methods of computing said amount and/or provide definition of "same service" or "maximum amount allowable."
> B. Any document, reports, memorandum or other writing of any kind including, but not limited to, records of the defendant identifying or referring to contracting providers who supply helicopter/air ambulance service in mountainous regions.
> C. Any document, reports, memorandum or other writing of any kind including, but not limited to, records of the defendant upon which the defendant has based its experience and claim that the air ambulance provider utilized by the plaintiff "has higher charges than those we typically see nationally."
> D. Any documents, reports, memorandum or other writing of any kind which define what defendant contends to be "relevant benefits claim files."

Defendant states that all the information requested by the plaintiff was provided during discovery.

Plaintiff has not set forth grounds upon which to postpone ruling on the motion for summary judgment. The court may defer considering a motion or allow time to obtain affidavits or declarations if the nonmovant shows it cannot present facts essential to justify the opposition of the motion. Fed.R.Civ.P. 56(d). However, the plaintiff does not argue that she does not have the essential facts to oppose the motion. Furthermore, the information requested by plaintiff has been provided by BCBS.

Even if the plaintiff was allowed to proceed with the second level appeal after obtaining the documentation now provided, there is no evidence that she would succeed. There is no showing that delaying ruling on this motion to allow a plaintiff to complete another round of an administrative appeal would have a different effect. Ultimately, it would just delay the court ruling on the motion and bringing finality to the case.

c. Denial of Claim

Defendant argues that they paid plaintiff's claim in accordance with the plan. Plaintiff did not provide any argument in opposition.

In determining whether an administrator's decision was arbitrary and capricious, the Tenth Circuit looks to various indicia such as lack of substantial evidence, mistake of law, bad faith, and conflict of interest by a fiduciary. Caldwell v. Life Ins. Co. of North America, 287 F.3d 1276, 1282 (10th Cir. 2002). The Administrator's decision need not be the only logical one or even the best one. It need only be sufficiently supported by facts within "his" knowledge to counter a claim that it was arbitrary or capricious." Kimber v. Thiokol Corp., 196 F.3d 1092, 1098 (10th Cir. 1999) (quoting Woolsey v. Marion Labs, Inc., 934 F.2d 1452, 1459 (10th Cir. 1991). The insured has the burden of showing a covered loss, and the insurer must prove facts

that bring a loss under the exclusionary clause of the policy. Blair v. Metropolitan Life Ins. Co., 974 F.2d 1219, 1221 (10th Cir. 1992).

The plan contains a section dedicated to the receipt of services by a non-contracting provider. The section describes how BCBS determines the allowable charge, and sets forth that the insured is responsible for any difference. Med-Trans bill was for a helicopter ride, which neither party disputes was an ambulance service. BCBS states that Med-Trans, a Colorado company, is not a contracting company. The plaintiff does not dispute this fact. The total bill for Med-Trans was $16,589.62. BCBS paid $4,285.94 based on the allowable charge for contracting providers.

Defendant set forth the basis for the denial of the claim in numerous letters to plaintiff.

"As stated in the member contract, when a provider is non-contracting, any balance above the allowed charge is the patient responsibility. We understand that this was an emergency and therefore, we are not processing the claim with additional charges or penalties that could be added to the claim for receiving services from a non-contracting provider. We have processed the claim correctly in that you are responsible for the balance above the allowed charge that the provider was charging. Since they are not in-network, we cannot force them to take that amount as the write-off.
If you are disputing that amount, you can contact the provider. Since this claim has processed correctly according to the contract provisions and benefits, there are no further appeal options available to you." (Doc. 35-2, p. 17).

In another letter sent to plaintiff's counsel, BCBS stated,

"Our decision was based on your contract information. Your contract indicates that if a non-contracting provider is used there is a 20 percent reduction of the maximum allowed payment for eligible services, in addition to another 20 percent penalty for utilizing a non-Blue Choice non-preferred provider. However, in the case of an emergency, these payment reductions are not applied, and the claims is paid at 100 percent of the maximum allowable payment.
As Med Trans is not a contracting provider, we cannot make them write off the balance of $12303.68, which is the amount over the allowed charge." (Doc. 35-2, p. 26).

8

Finally, BCBS sent plaintiff's counsel a letter which contained the following:

> "Second, BCBSKS has not breached its contract or violated Kansas insurance law in any way in its provision of benefits in this matter; instead, benefits have been paid precisely as your wife's certificate of coverage promises. Unless I have misunderstood the facts, your wife received air ambulance services in the state of Colorado by a provider that does not contract with the applicable Blue Cross and Blue Shield entity servicing that area, to wit, Anthem Blue Cross and Blue Shield of Colorado. These services were deemed to be emergent in nature. The applicable section of the certificate is D.2(b)(4), which delineates reimbursement for services rendered by non-contracting ambulance providers outside of the BCBSKS service area. It provides that the allowed benefit for such services is the providers charge, or 80% of BCBSKS' maximum allowable payment, whichever is less. However, because of the generally less voluntary nature of emergency services, the 20% penalty is waived per the terms of the same section. Nevertheless, nothing in the contract provides that BCBSKS will completely indemnify a member of services received by a non-participating provider. I will not recite the specific language, as you are undoubtedly well-versed in those provisions by now.
> BCBSKS does not use usual and customary reimbursement (UCR) methodology, and there is certainly no legal requirement that we do so; instead, we have proprietary amounts (maximum allowable payments) that are paid for each service, regardless of where the services are provided, and which are adjusted annually. These are amounts that all BCBSKS contracting providers have agreed to as reimbursement in full for the same services. BCBSKS is not affiliated with Anthem (Wellpoint) BCBS of Colorado, and has no say as to which providers that entity contracts with. Based on our experience, the air ambulance provider utilized by your wife has higher charges than those we typically see nationally. That said, air ambulance service tends to be a highly profit-oriented business, which is arguably evidenced by the fact they have chosen not to contract with Anthem. The basis for this is unknown, as there is certainly freedom to contract, but one can readily conjecture that the higher base rates in Colorado are at least in part due to the higher risk involved with flight in that region and the relative affluence of the individuals they serve." (Doc. 35-2, p. 46-47).

Finally, BCBS provided the Maximum Allowable Payment Schedule for 2008 to the plaintiff, which provides the maximum amount payable on a claim.

Under all the factors, BCBS's decision to deny the claim was not arbitrary and capricious. BCBS reviewed the claim on two different levels of appeal. There is no evidence before the court that the conflict of interest of the plan administrator influenced the decision.

9

After BCBS determined that the claim was processed correctly, BCBS encouraged the plaintiff to request Med-Trans to reduce their bill.

BCBS reviewed the claim and paid the claim under the terms of the contract between the parties. "Questions involving the scope of benefits provided by a plan to its participants must be answered initially by the plan documents, applying the principles of contract interpretation." Chiles v. Ceridian Corp., 95 F.3d 1505, 1515 (10th Cir. 1996). The language of an ERISA plan should be given "its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." Id. at 1511. "In interpreting the terms of an ERISA plan we examine the plan documents as a whole and, if unambiguous, we construe them as a matter of law." Id. Since Med-Trans was a non-contracting provider out of the service area, BCBS paid them what they would pay a contracting provider, per the written language in the contract. The interpretation of the plan language of the contract is supported by the decision of BCBS.

The terms of the contract are not ambiguous. Plaintiff has failed to set forth any evidence that BCBS denied her claim based on a mistake, insubstantial evidence, or a conflict of interest. BCBS's decision is supported by the plain language of the contract.

IV. Conclusion

IT IS THEREFORE ORDERED that defendant's Motion for Summary Judgment (Doc. 32) is GRANTED.

IT IS FURTHER ORDERED that defendant's Motion to Strike Jury Demand (Doc. 39) is DENIED as moot.

IT IS SO ORDERED this 28th day of March, 2011.

s/ Wesley E. Brown
Wesley E. Brown
Senior United States District Court Judge